DANVILLE SNELL, in equity, *vs.* NAHUM MITCHELL *et al.*

Androscoggin, 1875.—June 28, 1876.

A bill in equity, praying for the specific performance of a contract, is addressed to the sound discretion of the court. A decree for specific performance cannot be claimed as matter of right.

If a contract for the conveyance of real estate is unconscionable, or ambiguous, or through fraud or mistake or want of skill on the part of the draftsman, does not truly embody the agreement of the parties, or if for any other reason, the court is of opinion that the contract is one which in equity and good conscience ought not to be specifically enforced, it will decline to interfere, and will leave the parties to such redress as can be obtained in an action at law.

*Thus* : where the contract required the plaintiff to pay one-half of the expenditures upon the farm mortgaged for the support of the plaintiff's father, who was also the defendant's father-in-law, and the parties disagreed as to whether the support of the father was a part of the expenditure to be shared; where also, by the contract, one party could be compelled to sell, but the other could not be compelled to buy; where the plaintiff delayed fourteen years before asking a conveyance, holding meanwhile the defendant's notes to the value of the farm given as security for the promise to convey,

which till then he had declined to surrender; where, after the fourteen years, the defendant had sold the premises, supposing, as he claimed, the contract was null and void by reason of non-performance by the plaintiff; where also aid was asked for relief from difficulties into which the plaintiff got himself in an attempt to defraud his creditors,—the court, in a case where all these questions were raised, declined to interfere to grant relief by decreeing specific performance of the contract for conveyance.

A court of equity will not knowingly decree an impossibility. *Thus*: where A. mortgaged a farm to B. to secure a bond for his maintenance, and then contracted with C. to convey to him the same real estate free of all incumbrance, in a bill in equity in favor of C. against A., the court in the absence of any waiver by C. or of any expression by him of a willingness to accept an incumbered title, refused to decree specific performance.

BILL IN EQUITY.

| 65 | 48 |
|----|----|
| 81 | 368 |

The bill prays for a specific performance of a contract for the conveyance of real estate, as set out in the following instrument.

"This agreement, made this 19th day of February, 1861, between Nahum Mitchell, of Turner, county of Androscoggin, of the first part, and Danville Snell, of said town, of the second part, witnesseth, that the said Mitchell, in consideration of the covenants on the part of the party of the second part, hereinafter contained, doth covenant and agree, to and with the said Danville, that he shall have one-half of the improvements and profits of certain lots of land deeded to said Mitchell by Caleb Snell; also the improvements and profits of one-half of the stock thereto belonging. And said Mitchell doth further agree to give said Danville, a deed of one-half of said lots of land, also a bill of sale of one-half of the stock thereto belonging, whenever said Danville shall deliver up to said Mitchell, a certain note given by said Mitchell to said Danville Snell, to the amount of $1253, dated February 19, 1861. And the said Danville, in consideration of the foregoing, agrees to and with the said Nahum, that he will be holden to pay one-half of all the expenditures upon said lots of land so long as he holds said note against said Mitchell, and further, that he will not sell or convey said note out of his possession." (Signed, Nahum Mitchell, Danville Snell, sealed and witnessed.)

The defendants' answer denied performance on the part of the plaintiff, and claimed that the contract was void for uncertainty, and that the plaintiff had waived performance.

The case shows that Caleb Snell, the owner of the Snell farm, in Turner, conveyed it by deed of warranty, to his son Danville, May 2, 1859; that August 6, 1860, Danville, to keep it from being taken for his wife's debts, quitclaimed to Caleb; that Caleb, in consideration of a bond for his maintenance, quitclaimed to his son-in-law, Mitchell, February, 1861, and on the same day took a mortgage back to secure performance; that on the next day, Mitchell and Snell entered into the mutual covenants before stated; that Mitchell, November 20, 1873, conveyed to his son-in-law, Watson, the whole farm in consideration of a bond for his own and Caleb's maintenance; that from 1861 to 1874, the plaintiff continued to live and work on the farm according to the terms of the contract as interpreted by him, contributing nothing towards his father's support; that in 1874, he was first told by the defendants in substance, that he had no rights there.

*J. Jeffery*, for the plaintiff.

*G. D. Bisbee*, for the defendants.

WALTON, J. This is a bill in equity in which the court is asked to decree the specific performance of a contract for the conveyance of real estate.

Such an application is addressed to the sound discretion of the court. Neither party to a contract can insist, as a matter of right, upon a decree for its specific performance. The courts of law are always open to them, and ordinarily an action at law furnishes an ample remedy for the breach of a contract; and when such is the case a court of equity generally declines to take jurisdiction. If a contract for the conveyance of real estate is in all respects fair, and free from ambiguity, and there are no insurmountable difficulties in the way of a specific performance, its performance will ordinarily be decreed. On the contrary, if the contract is unconscionable, or ambiguous, or through fraud or mistake, or want of skill on the part of the draftsman, does not truly embody the agreement of the parties; or if, for any other reason, the court is of opinion that the contract is one which in equity and good conscience ought not to be specifically enforced, it will decline to in-

terfere, and will leave the parties to such redress as can be obtained in an action at law. *Rogers* v. *Saunders*, 16 Maine, 92. *Bradbury* v. *White*, 4 Maine, 391. 3 Greenl. on Ev., § 361. 1 St. Eq., § 769.

It is impossible to lay down any very precise rules as to when a court of equity will or will not take jurisdiction for the purpose of decreeing the specific performance of a contract, as each case must depend very much upon its own peculiar circumstances. 1 St. Eq., § 742.

It is safe, however, to say that 'a court of equity will never knowingly decree an impossibility; that it will never knowingly require a party, under the pains and penalties of perpetual imprisonment, to do an act which it is out of his power to do.

Many reasons might be given for declining to decree the specific performance prayed for in this case.

I. The bill itself is very defective. It contains no description of the land on which to base a decree. If a decree for its conveyance is made, the court must search outside of the record for a description of it.

II. The contract is not free from ambiguity. The principal controversy is in relation to its meaning. And it is very much to be feared that important stipulations, to be performed by the plaintiff, were, through the inadvertence or want of skill of the draftsman, omitted altogether.

III. The contract lacks the element of mutuality. One of the parties could be compelled to sell, but the other could not be compelled to buy. This alone is often sufficient to induce the court to withhold a decree for specific performance.

IV. There has been great delay. For fourteen years the plaintiff delayed to elect whether he would take the land or not; and when he finally did elect to take it, it had been conveyed to another; and we are by no means certain that the purchaser is not entitled to be regarded as a *bona fide* purchaser, against whom the plaintiff should not be allowed to enforce his claims. True, the purchaser had knowledge of the agreement on which the plaintiff relies, but he swears, that by reason of non-performance by the plaintiff,

he supposed it had become null and void. If he did so believe, he can hardly be charged with bad faith.

V. It is rather a bold adventure for a party to come into a court of equity and ask its aid to get him out of a difficulty, into which he got himself in an attempt to defraud his creditors. The plaintiff testifies that he once had a deed of this land, and put it out of his hands to keep it away from his creditors; that he took security for a deed instead of a deed, to save it from debts made by his wife. The security was a witnessed note for $1253, (which the plaintiff still holds,) and an agreement to reconvey upon surrender of the note.

VI. But another, and in the opinion of the court, a sufficient reason for declining to make the decree prayed for, is the fact that it is out of the power of the defendants to comply with it, if it should be made. The farm, one-half of which the plaintiff asks to have conveyed to him, was originally the property of Caleb Snell, father of the plaintiff, and father-in-law to the defendant, Mitchell; and when he parted with his title, the only consideration expressed in the deed, was a bond for his maintenance and the maintenance of his wife; and the land was mortgaged back to secure the performance of that obligation; and the land is still under mortgage for that purpose, and was, when the agreement to convey to the plaintiff was made; and Caleb Snell still lives, and although upwards of ninety years of age, no one can say with certainty, that the whole value of the farm will not yet be needed to carry him through. Now the obligation which the plaintiff seeks to have specifically enforced, if it entitles him to any title at all, entitles him to an unincumbered one; and he has not signified his willingness to accept any other. Such a title the defendants cannot give. If the plaintiff had taken notice of the fact that the defendants could not give him an unincumbered title, and had offered to take such a title as they could give, this objection would be obviated. But this he has not done; and considering the magnitude of the incumbrance, and the uncertainty that attends it, in connection with the fact that the plaintiff still holds a witnessed note for the value of his half of the farm, the court does not feel at liberty to presume that the plaintiff would be willing to accept

any other title than the one prayed for. Such a title the defendants cannot give.

For these reasons the court declines to make the decree prayed for.                    *Bill dismissed with costs.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and PETERS, JJ., concurred.